51 CCPA

## Application of Walter LORENZ and Gerhard Schrader.

### Patent Appeal No. 7211.

United States Court of Customs
and Patent Appeals.
July 2, 1964.

Connolly & Hutz, Wilmington, Del.
(Werner H. Hutz, John A. Sarjeant,
Wilmington, Del., of counsel), for appellants.

Clarence W. Moore, Washington, D. C.
(Jack E. Armore, Washington, D. C., of
counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and
RICH, MARTIN, SMITH and ALMOND,
Judges.

SMITH, Judge.

Stated generally, the issue presented
by this appeal arises under 35 U.S.C. §
103 and requires us to determine whether
the differences between the compounds
of the appealed claims and the prior art
are such that the claimed subject matter
as a whole would have been obvious to
one of ordinary skill in the art at the
time appellants made their invention.

The application in issue, Serial No.
8,928, filed February 16, 1960, is a joint
application of appellants and is entitled
"Thionophosphonic Acid Esters and a
Process for their Production." Each of
the appealed claims 1–6, 9 and 11 relates
to such esters and to compounds having
stated formulas. The claimed compounds
are said to possess insecticidal and acaricidal properties.

Claim 1 is the generic claim and reads
as follows:

"1. A thiophosphonic acid ester
of the following formula

in which R stands for a member
selected from the group consisting
of lower alkyl and alkenyl radicals
up to 8 carbon atoms and phenyl
radicals, $R_1$ stands for a lower alkyl
radical up to 4 carbon atoms and X
and Y stand for a member selected
from the group consisting of oxygen
and sulfur, at least one of them being sulfur."

Claims 2–4, 6 and 9 cover those compounds of claim 1 wherein R is a lower
alkyl group and X and Y are both sulfur.
Such compounds are referred to as alkyl-
dithiophosphonates. Claims 5 and 11
cover those compounds of claim 1 wherein R is a phenyl radical, X is sulfur and
Y is oxygen. Compounds in this group
are called phenylthiophosphonates.

Appellants assert that the claimed compounds are highly active plant protective
agents having insecticidal and acaricidal
activity, as against aphids, mites and
caterpillars. The toxicity is said to be
of the order of the known corresponding

phosphoric acid esters disclosed in the prior art. Appellants also assert, however, that the new compounds have an advantage over the prior phosphoric acid esters in that their thermal stability is greater than that of the corresponding phosphoric acid esters. It is asserted that this stability is such that appellants' claimed compounds may be used even in moist, tropical climates. While no appealed claims cover a method of production of the new compounds, the method disclosed by appellants appears to be similar to the methods used for producing the corresponding phosphoric acid esters of the prior art.

The references relied upon by the examiner and the board in rejecting the claims are:

| Lorenz I | 2,758,115 | Aug. 7, 1956 |
|---|---|---|
| Lorenz II | 2,843,588 | July 15, 1958 |
| Schrader | 2,881,201 | Apr. 7, 1959 |
| Hoffmann et al. | 2,907,787 | Oct. 6, 1959 |
| Schrader et al. | 2,914,530 | Nov. 24, 1959 |
| Austrian Patent | 167,432 | Jan. 10, 1951 |
| German Auslegeschrift | 1,050,768 | Feb. 19, 1959 |

In addition, the board cited Kosolapoff, Organophosphorus Compounds 143 (1950).

The rejection which was affirmed by the board is that stated in the examiner's answers of March 30, 1962 and August 9, 1962. The answers show the rejection to have been based on Lorenz I, Lorenz II and Schrader et al. as the primary references in view of the disclosures of the secondary references, Hoffmann et al., Schrader, the Austrian patent and the German patent. The examiner's position was that the primary references taught the corresponding analogous N–methyl-benzazmido thiophosphoric acid esters which were disclosed as having the same utility as the insecticides and acaricides of the compounds of the rejected claims. It was the examiner's position that the compounds of the prior art differed from the compounds of the appealed claims in that R is an alkoxy group instead of an alkyl or phenyl group on the active insecticidal chain. It was the examiner's position as stated in his answer of March 30, 1962 that "The ancillary art demonstrates that it is generally known in this art to make such modifications to known insecticidal thiophosphoric acid esters for the purpose of obtaining modified esters wherein one of the alkoxy groups is replaced by alkyl or phenyl on the active insecticidal chain, and further demonstrates that this modification is applicable to diverse known insecticidal thiophosphoric acid esters." It was the examiner's conclusion that such modification would be expected to lead to insecticides of equal or superior insecticidal action.

Upon remand, the examiner filed a further answer dated August 9, 1962 in which the ground of rejection was more precisely stated as follows:

"* * * The rejection is not based on equivalency as urged, but rather on the ground that the instant modification is obvious in view of the fact that such modification is expected to lead to better or outstanding insecticidal activity and better properties in general."

Appellants' disagreement with the examiner's position is summarized in their brief as follows:

"Those skilled in the art would not convert the thiophosphates of the primary references to the thiophosphonates now claimed on the basis of the ancillary art of record, because the thiophosphonates of the ancillary references are structurally

extremely different from the compounds of the primary references."

Appellants' brief seems to acknowledge that the primary references disclose the corresponding acaricidal thio and dithio phosphoric acid esters, the phosphorus atom being characteristically bonded to the organic radicals through an oxygen or sulfur atom; these compounds differing from those of the appealed claims only in that the radical corresponding to R is a lower alkoxy group. Thus, the more specific issue for decision becomes whether the claimed phosphonic acid esters would have been obvious within the meaning of 35 U.S.C. § 103 from the teachings of the corresponding phosphoric acid esters in the primary references. A decision on this issue turns on whether the substitution of a lower alkyl or phenyl group for the lower alkoxy group in the compounds of the primary reference would have been obvious under the conditions specified in 35 U.S.C. § 103.

To resolve this issue we shall first consider the references. Lorenz I, Lorenz II and Schrader et al. disclose thio and dithiophosphoric acid esters of benzazimides having the general structural formulae shown therein. While Lorenz I discloses both the thio and dithio esters, Lorenz II and Schrader et al. disclose only thio esters. Lorenz II indicates the thiol form and Schrader et al. the thiono form. The references state that these compounds are highly effective insecticides, especially against spider mites, and are therefore valuable plant protecting agents.

Schrader discloses that substituted mercaptoalkyl esters of thio or dithio phosphates and phosphonates are strong contact and systemic insecticides. The class of compounds disclosed (including phosphates and phosphonates) is represented by generic structural formulas and subgeneric structural formulas indicating subclasses of phosphates and phosphonates. With respect to the phosphonates indicated by the first two subgeneric structural formulas, the organic radical bonded directly to the phosphorous atom may be a lower alkyl (as methyl) or an aryl group (as phenyl), while the organic radical bonded to the phosphorous through oxygen is a lower alkyl radical (as ethyl or isopropyl).

Hoffmann et al. discloses the preparation of thiophosphonic acid esters of substituted thioethanols, wherein the organic radical ($R^1$) directly bonded to the phosphorous atom may be an alkyl group of from 1 to 4 carbon atoms, while the other organic radical ($4^2$) is an alkoxy group in which the alkyl group has 1 to 4 carbon atoms bonded to the phosphorous through oxygen. The substituent in the thioethanol moiety ($R^3$) "is either an alkyl, aryl or heterocyclic group" and "$R^3$, in particular, may be varied almost at will, so long as it is thermally stable and does not enter into side reactions." The compounds are described as insecticidal.

The German patent discloses that excellent insecticidal activity is found in thionophosphonic acid esters of negative substituted phenols having a phenyl group directly bonded to the phosphorus atom and a lower alkyl group bonded to the phosphorus through oxygen. The negative substituents of the substituted phenol moiety may be one or more halogens or a halogen plus nitro groups. The compounds are said to be effective against caterpillars and spider mites.

The Austrian patent discloses thionophosphoric acid esters having the structural formula shown therein wherein the organic radicals are bonded to the phosphorus atom through oxygen, and two of said radicals may be lower alkyl groups and the third radical is a negative substituted phenyl or alkyl group. The negative substituents may be a nitro group or a halogen. The compounds are said to be "outstanding for active or passive control of sucking or chewing insects," and effective "even against aphids."

Kosolapoff states that "Primary and secondary phosphonic acids are, as a rule, crystalline substances that have, respec-

tively, dibasic and monobasic functions," and that "They are among the most stable derivatives of phosphorus in terms of thermal treatment."

To summarize and apply the foregoing to the claimed invention, Schrader discloses that the substituted mercaptoalkyl esters of both thiophosphoric and thiophosphonic acids are highly effective insecticidal agents and in examples 3, 4, 12, and 14 with respect to the thiophosphonic acids, shows lower alkyl and phenyl groups bonded directly to the phosphorus atom. Hoffmann et al. discloses insecticidal thiophosphonic acid esters having a lower alkyl group bonded to the phosphorus. The Austrian patent discloses insecticidal and acaricidal thiophosphoric acid esters, while the German reference shows corresponding phenyl thiophosphonic acid esters to be highly effective acaricidal compounds. The secondary references indicate that thiophosphonic acid esters frequently are insecticidal. The secondary references, individually and collectively, also would seem to us to teach one of ordinary skill in this art that, where thiophosphoric acid esters (including the lower alkyl or phenyl esters) are known to be insecticidal, the corresponding thiophosphonic acid esters can also be expected to be effective insecticides. Thus, given the teachings of the secondary references, we think it would have been obvious for a person of ordinary skill in this art to substitute a lower alkyl or phenyl group for the lower alkoxy group in the thiophosphoric acid esters of the primary references, thus converting these esters into the corresponding thiophosphonic acid esters recited in the appealed claims.

Appellants argue that since the secondary references "have chemical structures which are unlike those of the primary references," they "would not lead one skilled in the phosphorus insecticidal art to modify the primary reference compounds to form the claimed compounds." They also insist that the refusal of the claims is based upon the erroneous premise that any phosphonic acid derivative would be useful as an insecticide and

that the thiophosphonic acid esters are commonly employed in insecticidal compounds, indicating that the allowed claims in the case rebut these suppositions. In addition, they urge that the patentability of the individual claims cannot be predicated solely upon consideration of the generic claim since there are allegedly significant differences in the claims.

The appellants' contention that the structural differences in the secondary references, since they do not contain the N–methyl–benzazimido group, would make it unobvious to modify the primary references to form the claimed compounds overlooks what appear to us to be controlling and compelling similarities. The appellants recognize that the phosphonates of the secondary references differ essentially only in one organic moiety or ester group from the primary references and that is the one corresponding to the benzazimido group. The other organic groups or ester moieties comprise the same or similar groups and correspond to those in the appealed claims. In addition, both groups of references indicate that the compounds disclosed therein are highly insecticidal and even acaricidal. Further, contrary to the appellants' position, the secondary references, considered separately or together, indicate that corresponding thiophosphoric acid esters and thiophosphonic acid esters would have at least generally similar insecticidal properties.

Appellants contend that "significant differences" between the appealed claims were not considered below, inasmuch as some of these claims are to alkylthiophosphonates and others to phenylthiophosphonates. We think the examiner's decision, affirmed by the board, clearly recognized such differences in the claims and properly noted that the secondary references of the prior art disclosed alkyl and phenyl thiophosphates and thiophosphonates.

Our review of the references and our careful consideration of the arguments advanced by appellants lead us to agree with the examiner and the board that

since the primary references show the corresponding thiophosphoric acid esters, which differ from the claimed compounds only with respect to the substituent (an alkoxy group) designated by R therein, instead of an alkyl or phenyl group as claimed, it would have been obvious to a person of ordinary skill in the art to make the indicated substitutions. We agree that the secondary references show that such modifications will produce compounds having the same or improved insecticidal activity.

To avoid the rejection, appellants filed an affidavit by applicant Schrader, in which two thiophosphoric acid esters of the prior art were compared, as to insecticidal activity against aphids, with corresponding thiophosphonic acid esters of the appealed claims. The tests purport to show that the latter are more effective. As one of the grounds for refusing to recognize the affidavit showings as persuasive of patentability, the examiner and the board noted that the claimed compounds were not disclosed, in the specification as filed, to be *superior* in their insecticidal activity. In reply to this position appellants urge, and we think correctly, that there is no requirement that *superiority* over the prior art be disclosed in the original application; it is enough if the basic property or utility is disclosed.

Thus, we agree with appellants that the affidavit showings were proper evidence and that they must be considered. We think, however, that the affidavit showings are not persuasive as to patentability of the appealed claims. As pointed out by the solicitor, the limited comparative testing reported in the affidavit appears to be insufficient. The affidavit shows comparative tests between only the dithio esters, where an alkoxy group is replaced with an alkyl group, but no results are shown with respect to the monothio phosphonic acid esters or either the mono or dithio ester when R is a phenyl radical. Moreover, we agree with the examiner that even the limited comparative test results actually obtained are not persuasive, since

" * * * The ancillary art of record, particularly Schrader, shows that the instant type of modification of old known esters of thiophosphoric acid generally leads to superior and outstanding systematic [systemic?] insecticidal activity. The affidavit thus shows no more than what is expected by way of this obvious modification. * * * "

Also, as we have indicated, appellants' specification states that the toxicity of the claimed compounds "is of the order of the corresponding phosphoric acid esters." In view of this statement, we are not persuaded by an affidavit which purports to show facts inconsistent therewith.

With respect to appellants' assertion as to the greater thermal stability of the claimed compounds, it is noted that appellants specifically state in their brief that they "do not predicate patentability of the appealed claims on the thermal stability of their new compounds." Hence, we see no reason to consider whether the Kosolapoff reference suggests such an advantage.

In view of the foregoing, we affirm the decision of the board.

Affirmed.