Application of Philip M. CARABATEAS.
Patent Appeal No. 7266.

United States Court of Customs
and Patent Appeals.
May 27, 1965.

Laurence & Laurence, Washington, D. C. (Dean Laurence, Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 1 and 2 in patent application serial No. 860,368, filed December 18, 1959, for "Compositions and their Preparation." Product claim 7 has been allowed.

Appellant's invention, in its composition aspect, which is all we are concerned with in this appeal, is described in the specification as "residing in the concept of a composition having a molecular structure in which a lower-acyloxy substituent is attached to the remaining 4-position of 4-aryl-1-[omega-aromatic-omega-oxo-(lower - alkyl)]-piperidines." A stated object of the invention is "to provide useful * * * substituted-piperidines having a novel combination

of substituents attached to the 1- and the 4-positions of the piperidine ring." Whereas appellant acknowledges the existence of piperidines having a variety of substituents, including aryl and lower-acyloxy, in the 4-position and piperidines having an omega-aromatic-omega-oxo-(lower-alkyl) group in the 1-position, it is his contention that the invention, for the first time, provides piperidines bearing all three of these substituents, and that these piperidines are not only structurally unobvious but possess unobvious or unexpected beneficial properties.

The subject matter on appeal and its relation to the prior art can best be described by the following structural formula, wherein the ring positions are designated by arabic numbers:

$$\text{phenyl}-\underset{4}{C}\left(\begin{array}{l}O\!-\!\overset{\displaystyle O}{\overset{\|}{C}}\!-\!CH_2\,CH_3\\[4pt]H_2C5 \quad 3CHR\\[2pt]H_2C6 \quad 2CH_2\\[2pt]\underset{1}{N}\\[2pt]CH_2\,CH_2\,\overset{\displaystyle O}{\overset{\|}{C}}\!-\!\text{phenyl}\end{array}\right)$$

Claim 1 defines the compound wherein R is hydrogen, that is, 1-(3-oxo-3-phenyl-propyl) -4- phenyl -4- propionoxypiperidine. Claim 2 defines the compound wherein R is CH₃, that is, 3-methyl-1-(3-oxo-3-phenyl-propyl) - 4- phenyl -4-propionoxypiperidine. Both claims have been treated together, below and in this court. We will continue to treat them together and refer hereinafter to the claimed compounds simply as "appellant's compounds." It will be observed that the "4-aryl," discussed above, is 4-phenyl and the "1-[omega-aromatic-omega-oxo-(lower-alkyl)]" is 1-(3-oxo-3-phenylpropyl), the "3" in this expression meaning the third or "omega" (end) carbon atom in the "propyl" group counting from the

piperidine ring, as opposed to the "3-position" in that ring.

For the most part, all of the above discussed portions of appellant's compounds can be ignored since *structurally speaking* they differ from the compounds of the primary reference in the nature of the substituent in the "other" 4-position, that being propionoxy in appellant's compounds.

Although not per se part of the instant appeal, the so-called "process aspect" of appellant's invention is described in the specification "as residing in the concept of reacting a 4-aryl-1-[omega-aromatic-omega-oxo- (lower-alkyl)] -4- piperidinol with a lower-acylating agent," an acyl anhydride or an acyl halide being preferred. This is admitted to be a well known *type reaction* for preparing "esters," which appellant's compounds are, and should be observed as involving a *rather* large alcohol, the piperidinol, and a *smaller* (relatively speaking) acyl compound as reactants. Thus, the compound of claim 1 is prepared by reacting 1-(3-oxo-3-phenylpropyl) -4- phenyl -4- piperidinol hydrochloride with propionic anhydride and the compound of claim 2 is prepared by reacting 3-methyl-1-(3-oxo-3-phenylpropyl)-4-phenyl-4-piperidinol hydrochloride with propionyl chloride, the product in each case being treated with aqueous sodium hydroxide solution in order to convert it to the free base form, as it appears in the claim. The point about process is mentioned only because appellant makes the argument that his compounds are sometimes termed "simple esters" by reason of their having been prepared from a rather complex alcohol and a small acyl compound, citing a footnote in our In re Ward decision, 329 F.2d 1021, 51 CCPA 1132, and that this renders his compounds *structurally unobvious* over the art compounds since the latter comprise a rather simple alcohol moiety and a large acid or acyl moiety. Furthermore, so the argument goes, "all students of organic chemistry"

know that an ester, $R\text{-}\overset{\displaystyle O}{\overset{\|}{C}}\text{-}OR'$, cannot be

expected to behave like, or have properties like, the "reverse"[1] ester $R\text{-}O\text{-}\overset{\displaystyle O}{\overset{\|}{C}}\text{-}R'$, *unless* R and R' are closely similar in structure. We will answer this contention below.

Appellant's compounds "possess the inherent applied use characteristics of exerting a pronounced analgesic effect in animal organisms, as evidenced by pharmacological evaluation in rats according to standard tests procedures." Specifically, the compounds of claims 1 and 2 have been shown to possess, respectively, 9 times and 6 times the analgesic activity of the compound of the primary reference cited by the examiner. The *results* of this showing *have been admitted* by the examiner, the board, and the Patent Office Solicitor.

The prior art of record is:

| | | | |
|---|---|---|---|
| Elpern I | 2,846,437 | Aug. | 5, 1958 |
| Elpern II | 2,850,500 | Sept. | 2, 1958 |
| Pohland II | 2,904,550 | Sept. | 15, 1959 |
| Pohland III | 2,951,080 | Aug. | 30, 1960 |
| Cutler et al. | 2,962,501 | Nov. | 29, 1960 |

Braenden et al., "Bull. World Health Organ.,"
Vol. 13, pp. 956 and 962 (1955)

———◆———

Cutler, the primary reference, relates generally to a class of N-substituted piperidine compounds which are "highly potent analgesics." They are prepared through a sequence of steps, the first intermediate products being a group of compounds which includes the ethyl ester of N-substituted-4-phenyl-4-piperidinecarboxylic acid. Structurally, this compound is the "reverse ester" of the compound of claim 1, it is specifically named in the reference (as its hydrochloride salt), and the intermediates of which it is a member are said to "themselves have a high degree of analgesic activity" and "are themselves potent analgesics." No particular test results or data in this regard are given.

In an effort to establish that esters, closely related to[2] and of the type represented by the appealed claims, frequently exhibit substantially equivalent analgesic properties with respect to their "reverse esters," the examiner cited two pairs of secondary references, Elpern I and II and Pohland II and III.

Elpern I discloses lower alkyl 4-phenyl-1-(substituted-alkyl) piperidine-4-carboxylates, i. e., compounds of the formula

wherein X is a lower alkylene group, Z can be oxygen, and Ar can be phenyl.

---

[1] The expression "reverse ester" will be used throughout the opinion as a convenient way to designate this relationship. Technically, of course, both compounds are "esters" and there is no such thing as a "reverse" ester.

[2] The relationship is certainly as close, structurally at least, as that between the Cutler compound and meperidine ("Demerol"), which compounds appellant's counsel stated at oral hearing to be "closely related." The difference in each instance resides in the nature of the N-substituent. In meperidine the N-substituent is methyl.

The compounds are said to be "many times more potent as analgesics than meperidine * * *." Specifically, ethyl 4-phenyl-1-(3-phenoxypropyl) piperidine-4-carboxylate (as its hydrochloride salt) was found to be approximately twelve times as effective an analgesic as meperidine hydrochloride. The "1-(2-phenoxy-*ethyl*)" homolog was found to be about six times as effective as the same standard compound and the "1-(4-phenoxy-*butyl*)" homolog three times as effective as meperidine hydrochloride. In each of these tests, the compound was administered *intraperitoneally* in aqueous solution.

Elpern II discloses, inter alia, the "reverse esters" of Elpern I, hence of the type on appeal. They are described as being "many times more effective than the commercial analgesic meperidine hydrochloride" and it is further said that they "can be formulated in the manner conventional for potent analgesics * * *." The compound 1-(3-phenoxypropyl)-4-acetoxy-4-phenylpiperidine, as its hydrochloride salt, was found to be approximately 180 times as potent an analgesic as meperidine hydrochloride when measured subcutaneously, and *24 times* as potent as meperidine hydrochloride when measured *intraperitoneally*. In addition, the Elpern II compounds are said to possess "a relatively low toxicity * * *."

The Pohland references are, we believe, cumulative to the showing of the above discussed secondary references and accordingly will not be considered since it is believed unnecessary to a decision in this appeal.

We think the disclosure in the Elpern patents refutes appellant's contention, supra, that "reverse esters" cannot be expected to behave alike, or to have like

properties, unless their "R" groups are closely similar in structure. It has been amply demonstrated that, however accurate that statement may be as a *general* proposition, it does not apply as regards *analgesic* activity in esters of the type with which we are here dealing. Not only do the "reverse esters" of the Elpern patents possess the same kind of pharmacological activity, but, in addition, they are both found to be *potent* analgesics. Admittedly, the term "potent" is somewhat nebulous but we believe there are disclosed sufficient data from actual tests, some of which has been set out above, to support our conclusion that *these particular* "reverse esters", i. e., 1-substituted-4-phenylpiperidines having the ester group in the other 4-position, would be expected to have somewhat like properties as far as *analgesic behavior* is concerned.

We now consider what appellant himself says to be the "major" issue in the appeal, viz., whether an affidavit [3] showing the compounds of claims 1 and 2 to be respectively *nine times and six times more active* as analgesics than the compound of the Cutler primary reference is persuasive evidence of unobviousness and patentability of these compounds. These figures were arrived at by finding, first, that the compounds were, respectively, 1350 times and 900 times more effective than meperidine hydrochloride on a molar basis in terms of the bases, using the same standard technique as was used by the patentees Elpern and Pohland, viz., the Bass-Vanderbrook modification of the D'Amour-Smith method.[4] The compounds were administered subcutaneously. Having found that the Cutler compound (i. e., the "reverse ester" of the compound of claim 1) was, using exactly the same test and

3. Of general interest, but having no significance otherwise, is the fact that the results of this affidavit were disclosed in the application at the time of filing.

4. Also of general interest is the fact that allowed claim 7, which reads "1-(3-Oximino -3- phenylpropyl) -4- phenyl -4-propionoxypiperidine," which com-

pound was prepared by reacting the compound of claim 1 with hydroxylamine hydrochloride "utilizing operating conditions ordinarily employed for converting a ketone into its oximino derivative," was found to be 300 times as potent an analgesic as meperidine hydrochloride on a molar basis in terms of the bases.

basis of reporting, about 150 times more potent than meperidine, appellant then calculated his compounds to be nine and six times more effective than the Cutler compound. There has been no challenge to this evidence as such; it is unequivocally before us. The issue, rather, is what is its *legal significance*.

The solicitor contends the differences in activity shown by the affidavit to be mere differences of *degree,* not of *kind,* and that the latter sort of difference must be present before the compounds can be unobvious under the statute. The appellant contends that the board, at the time of its decision, "was following the practice specifically held to be erroneous by this Court in In re Papesch," 315 F.2d 381, 50 CCPA 1084, and that that case is controlling here. Appellant goes on to say:

> In the instant case appellant's showing was made on a utility which the prior art compound was known to possess, i. e. the prior art compound was known to have analgesic activity. The Papesch case did not deal with the situation where the particular property on which the showing was based was present in the prior art compound, but where the magnitude of improvement was such that it amounted to a difference in kind rather than a mere difference in degree. Yet, philosophically, Papesch cannot be distinguished on that basis. It seems clear, from subsequent cases, this Court meant Papesch to be applied broadly to lead to a return to the former Haas-Henze showing practice in all situations.

> \*　\*　\*　\*　\*　\*

When considering that minor advances in activity are eagerly sought in pharmaceutical chemistry, a showing of nine and six times more activity than the most active compound of the art is indeed most significant, representing a different order of magnitude, and is proof of unobviousness and unexpected beneficial properties in a new compound.

\*　\*　\*　\*　\*　\*

Certainly relief of pain represents an area in which any improvement in effectiveness is especially significant and a six-fold advantage or a nine-fold advantage is very real and a greatly desired advantage, at least to one in pain. Clearly, the test of convincing evidence of substantially greater effectiveness has been met, and any apparent obviousness has been amply rebutted.

▇▇ We think appellant's contentions have merit and, under proper circumstances, would be persuasive of a favorable holding.[5] Suffice it to say that the following passage from In re Lohr, 317 F.2d 388, 50 CCPA 1274, which, in effect, agrees with appellant's position here is still apropos:

> When a new compound so closely related to a prior art compound as to be structurally obvious is sought to be patented *based on the alleged greater effectiveness* of the new compound *for the same purpose* as the old compound, clear and convincing evidence of substantially greater effectiveness is needed. [Emphasis ours.]

Thus we indicated in Lohr that it is possible to obtain a patent where the showing proves substantially greater effectiveness. See also, In re De Groote, 333 F.2d 247, 51 CCPA 1508; In re Lorenz, 333 F.2d 908, 51 CCPA 1522; In re Grier, 342 F.2d 120, 52 CCPA ——. We affirmed in Lohr because of a deficiency in the evidence produced.

▇▇ Here the record presents "clear and convincing evidence" that the claimed compounds have substantially greater analgesic effectiveness than one of the most, if not the most, active analgesic compound of the art; and, if the record showed simply this, appellant's

---

5. Our reasons as to *why* we believe an applicant is entitled to patent protection on compounds per se, as opposed to method claims, where outstanding properties are shown, have been fully explained in our recent decision in In re Ruschig, 343 F.2d 965, 52 CCPA ——, and will not be repeated here.

compounds might be found to be unobvious even though structurally similar to the art compound. However the record contains *other* evidence which we believe compels a holding that appellant's invention, considered as a whole, is suggested.

Referring to the Elpern patents, it will be seen that the Elpern II "1-(3-phenoxypropyl)-4-acetoxy-" compound, which has the same sort of ester structure as appellant's compounds, possesses *twice* the analgesic activity of the Elpern I ethyl (3-phenoxypropyl) piperidine-4-carboxylate. Compared with the Elpern I ethyl (2-phenoxy*ethyl*) piperidine-4-carboxylate and ethyl (4-phenoxy*butyl*) piperidine-4-carboxylate esters, this same Elpern II compound, albeit not the exact "reverse ester" but instead a homolog thereof, is, respectively, *four* and *eight times* more effective as an analgesic. We believe this amply suggests that esters having the structure of appellant's compounds will possess greater analgesic activity than their "reverse esters." Accordingly, a showing that appellant's compounds are six and nine times more effective than the Cutler "reverse ester" is not sufficient to establish patentability. *Under these circumstances,* we hold that appellant's compounds are obvious, within the meaning of 35 U.S.C. § 103.

We observe, finally, that the Braenden et al. publication, while listed in the examiner's answer and used therein to "refute arguments," apparently presented in appellant's brief before the board, discloses the results of various pharmacological studies on meperidine, and, more importantly, the *effect of varying certain substituents* thereon. On page 962 it is shown that in changing from the carboxylate structure, ring-$\overset{\text{O}}{\overset{\|}{\text{C}}}$-O-$C_2$ $H_5$, to the "reverse" structure, ring-O-$\overset{\text{O}}{\overset{\|}{\text{C}}}$-$C_2$ $H_5$, the substituent being in the 4-position of the ring and the remainder of the molecule being kept the same, *a five to ten-fold increase in analgesic activity is observed.* The conclusion must

be that this change in structure is solely responsible for the resultant change in activity. However, although the record is not clear on this point, we are inclined to view this reference as one upon which the examiner did not base his rejection, and, consequently, will not apply it to our holding, for to do so would, we think, amount to our making a new ground of rejection. See In re Nygard, 341 F.2d 924, 52 CCPA ——.

The decision of the board is affirmed. Affirmed.