**Application of Robert J. SLOCOMBE.**

**Patent Appeal No. 74–603.**

United States Court of Customs
and Patent Appeals.

Feb. 20, 1975.

Robert W. Furlong, Fish & Richardson, Boston, Mass., attorney of record for

appellant. Ernest K. Bean, Assts. Gen. Counsel, Akron, Ohio, of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, LANE, Associate Judges, and PHILIP NICHOLS, Associate Judge, United States Court of Claims.

BALDWIN, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 27 and 28 of appellant's application[1] entitled "Low Temperature Synthetic Rubber and Method of Making Same." We reverse.

## The Invention

Appellant claims a method or process for producing a vulcanizable polybutadiene disclosed as having improved flexibility at low temperatures. The claims on appeal are as follows:

27. A method for polymerizing 1,3-butadiene which comprises contacting said 1,3-butadiene with a catalyst consisting essentially of (a) a compound corresponding to the formula $R_3Al$, wherein R is alkyl radical having 2 to 4 carbon atoms and (b) titanium tetraiodide.

28. A process for producing rubbery vulcanizable polybutadiene which is characterized by improved flexibility at low temperatures, which process comprises polymerizing butadiene-1,3 in an inert hydrocarbon medium in the presence of a catalyst resulting from the interaction in said medium of (a) a trialkyl aluminum of the formula $R_3Al$ wherein R is an alkyl radical containing 2 to 8 carbon atoms and (b) titanium tetraiodide, the mol ratio of aluminum to titanium being from 0.3 to 1 to 15 to 1.

1. Serial No. 502,189, filed April 18, 1955.

2. The board further stated that appellant lacked support for claims 23 and 24 which possessed the limitations that the polybutadiene products contain at least 85% of the

## Prosecution History

Appellant's application, as originally filed on April 18, 1955, contained 13 claims directed toward methods of making polybutadiene, polyisoprene copolymers of butadiene and isoprene and the products polybutadiene and polyisoprene prepared by polymerizing their respective monomers in the presence of specific catalysts. The catalysts were broadly recited as the interaction product of (1) an aluminum compound of the formula $R_2AlX$, wherein R is an alkyl, cycloalkyl, or acyl radical, and, X a hydrogen, halogen, alkyl, cycloalkyl, or aryl radial, with (2) a metal halide selected from the group consisting of the chlorides, bromides and iodides of titanium and zirconium.

On October 9, 1961, two interferences, Nos. 92,258 and 92,259 were declared; appellant being senior party in the former and junior party in the latter. The counts were process claims involving, respectively, polymerization of butadiene with the interaction product of an aluminum trialkyl and titanium tetrachloride, and polymerization of isoprene with the interaction product from the same reactants, and also requiring, in each case, specific and different molar ratios of titanium to aluminum.

Priority was awarded against appellant in both interferences. The winning party in Interference No. 92,259 obtained U.S. Patent No. 3,114,743 (Horne) while the count of Interference No. 92,258 became claim 5 of U.S. Patent No. 3,657,-209 (Carlson et al.); both of which will be further discussed, infra.

Subsequent to a decision by the Patent Office Board of Appeals on April 8, 1964, holding that appellant's specification supported process claims directed to polymerization of butadiene and employing as a catalyst the interaction products of $AlR_3$ and $TiI_4$,[2] wherein R is an alkyl

cis-1,4 polymer and that 1 to 15 moles of trialkylaluminum are employed for each mole of titanium tetraiodide. This portion of the board's opinion is not considered relevant to the issues presented in the instant appeal to this court.

radical containing 2 to 8 carbon atoms, an interference[3] was declared with instant claim 27 as the count. Appellant was awarded priority as to claim 27. The examiner rejected both claims 27 and 28 on prior art.

### References

| | | |
|---|---|---|
| Horne | 3,114,743 | December 17, 1963 (filed December 2, 1954) |
| Robinson et al. | 3,118,864 | January 21, 1964 (filed November 22, 1954) |
| Crawford et al. (Australia) | 215,043 | November 1, 1956 |
| Stewart et al. (Canada) | 627,741 | September 19, 1961 |

Short et al., Rubber Chemistry and Technology, Vol. 30 (1957), pages 1118–1141.

Short et al., Rubber Chemistry and Technology, Vol. 32 (1959), pages 614–627.

Moyer et al., Journal of Polymer Science, Part A, Vol. 3 (1965), pages 217–229.

Additional prior art consists of claim 5 of U.S. Patent No. 3,657,209 (Carlson et al.), lost by appellant in Interference No. 92,258. Claim 5 of Carlson et al. is as follows:

The method which comprises polymerizing a monomeric material consisting essentially of monomeric butadiene-1,3 in an inert liquid hydrocarbon medium in the presence of a polymerization catalyst prepared by mixing (a) titanium tetrachloride with (b) a trialkyl aluminum compound, the proportions of (a) and (b) being such as to provide a molar ratio of titanium to aluminum of about 1.5 to 1.0 to 3.0 to 1.0.

U.S. Patent No. 3,114,743 (hereinafter Horne) discloses the preparation of polyisoprene by the polymerization of the monomer isoprene. The catalyst employed is the reaction product of equimolar proportions of (1) a compound containing a heavy metal occurring in the 4th to 6th positions of the long periods of the periodic table and (2) an organoaluminum compound. Viewed in a light most favorable to the Patent Office, the catalyst employed by Horne is the reaction product of a titanium halide, the chloride being most preferred, and an aluminum trialkyl.

U.S. Patent No. 3,118,864 (hereinafter Robinson et al.) discloses the preparation of homopolymers and copolymers of conjugated alkadienes such as butadiene, isoprene and chloroprene. The catalyst employed in carrying out the polymerization is the reaction product of titanium tetrachloride and a lithium-aluminum tetraalkyl.

### The Rejection

The board affirmed the examiner's rejection of claims 27 and 28 as being unpatentable (35 U.S.C. § 103) over Horne in view of Robinson et al. and over the count of Interference No. 92,258 (Claim 5, of Carlson et al.), in view of Robinson et al. or Horne. It was the board's position that

Robinson et al. disclose the similarity of butadiene and its homologue, isoprene, in a polymerization closely re-

---

3. Interference No. 94,426. See Smith v. Horne, 59 CCPA 712, 450 F.2d 1401 (1971).

lated to that herein claimed. In view of this disclosure, we agree with the Examiner that it would be obvious to substitute butadiene for the isoprene in the process of Horne, thus to anticipate appellant's claimed process, noting particularly the teaching in Horne (sentence bridging columns 2 and 3) of iodides as substitutes for chlorides of metals such as titanium in the catalyst combination.

The board found it unnecessary to specifically commit upon the rejection of claims 27 and 28 as being unpatentable (35 U.S.C. § 103) over claim 5 of Carlson et al. in view of Robinson et al. or Horne. We thus look to the examiner's answer to find the specifics of this rejection. It was the examiner's position that

[t]he count . . . is directed to polymerizing butadiene with a Ti $Cl_4$ -$AlR_3$ (R is alkyl) catalyst using a Ti/Al ratio of 1.5/1 to 3/1 (Al/Ti of 0.67/1 to 0.33/1). Since Horne teaches the equivalence of the Ti $I_4$-$AlR_3$ and Ti $Cl_4$-$AlR_3$ catalysts when polymerizing another conjugated diolefin, i. e., isoprene, a homolog of butadiene, it would be obvious to use Ti $I_4$ in place of Ti $Cl_4$ to polymerize butadiene as recited by the count. From the disclosure of Robinson et al, one would expect either butadiene or isoprene to form solid useful polymers using a titanium tetrahalide-$AlR_3$ catalysts in view of its generic teaching of organometallic reducing agents.

In response to these rejections, appellant submitted to the Patent Office three Rules 132 affidavits. The first, by Minchak, reports the Gehman Freeze Point of various polybutadienes and polyisoprenes, made in accordance with the prior art and the claimed process. Although the affidavit showed superior low temperature properties for butadienes prepared according to the claimed process as compared to polybutadienes of Robinson et al. or the count of Interference No. 92,258 or the polyisoprene of Horne,[4] the examiner refused to consider the results on two grounds:

■ [T]here is no basis in this specification for any differences of any kind including low temperature properties between polybutadienes or polyisoprenes produced with a $TiI_4$-$AlR_3$ catalyst as compared to a $TiCl_4$-$AlR_3$ catalyst. This specification, as far as the properties of the polybutadienes and polyisoprenes are concerned, teaches the equivalence of the catalysts formed from titanuem [sic] tetrahalides and a wide variety of organoaluminum compounds . . . . .

\*     \*     \*     \*     \*     \*

■ With the above in mind it is also believed that the affidavit provides insufficient evidence that the low temperature properties of polybutadienes produced within the bounds of claims 27 and 28 will inherently have better low temperature properties than those

4. The following represents a summary of data set forth in the Minchak affidavit:

| Polymer | Catalyst | Al/Ti Molar Ratio | Gehman Freeze Point (°C) |
|---|---|---|---|
| Prior Art Polymers | | | |
| Polybutadiene (Robinson et al.) | LiAl($C_4$)$_4$/TiCl$_4$ | — | −25, −39 |
| Polyisoprene (Horne) | Al($C_8$)$_3$/TiCl$_4$ | — | −60.5 |
| Polybutadiene (Emulsion) | — | — | −74 |
| Polybutadiene (Appellant's Example & Count of Interference No. 92,258) | Al($C_2$)$_3$/TiCl$_4$ | 0.67:1 | −79, −78.5 |
| Polymers Made by Claimed Method | | | |
| Polybutadiene (Run 44A) | Al($C_2$)$_3$/TiI$_4$ | 12:1 | −91 |
| Polybutadiene (Run 44B) | do | 6:1 | −92 |
| Polybutadiene (Run 44C) | do | 3:1 | −91 |
| Polybutadiene (Run 44D) | do | 1.5:1 | −90 |
| Polybutadiene (Run 46A) | Al($C_4$)$_3$/TiI$_4$ | 3:1 | −88 |
| Polybutadiene (Run 48A) | do | 3.2:1 | −86 |
| Polybutadiene (Run 62A) | Al($C_2$)$_3$/TiI$_4$ | 0.3:1 | −86.5 |
| Polybutadiene | do | 15:1 | −88 |

of Robinson et al. The specification does not teach that they do and in view of the difference produced between the two titanium tetrahalides, there is no reasons [sic] to presume they will. Moreover, it is a fact that the structure of the polybutadiene produced with a $TiI_4$-$AlR_3$ catalyst in dependent upon the Al/Ti ratio, the catalyst concentration and the solvent as shown by Moyer et al. and Stewart et al. The two Short et al. articles show how the properties of the polybutadienes are affected by its structure. The Crawford et al. reference also shows how structure and properties are affected by different Ziegler-type catalysts.

The second affidavit, by Macey, indicates that the Gehman Low Temperature Torsion Test is a measure of the potential use of a rubber at low temperatures, such as might be found in arctic regions. Macey further expressed his opinion that a difference on the order of as little as 10°C in the Gehman temperature has a pronounced influence on the practical application of a rubber.

The third affidavit, again by Minchak, was submitted to respond to numerous criticisms raised by the examiner with regard to the first Minchak affidavit. It would serve no purpose to discuss this affidavit in detail since the examiner found it convincing and withdrew his objection which was that Minchak's prior affidavit failed to accurately reproduce examples 6 and 7 of Robinson et al. for comparison with appellant's polybutadiene.

### Opinion

At the outset, we find that the three affidavits submitted under Rule 132, and particularly the first Minchak affidavit, are commensurate in scope with the claims. In an attempt to demonstrate otherwise, the examiner cited Canadian Patent No. 627,741 (Stewart et al.) and the Moyer et al. article to show that the cis-1,4 content of polybutadiene, made by employing tri-isobutyl aluminum/titanium tetraiodide as the catalyst, varies with the mole ratio of aluminum to titanium. However, as appellant points out, Stewart et al. shows no cis-1,4 content below 40% while Moyer et al. shows no cis-1,4 content below about 50% for any titanium tetraiodide catalyst. This is particularly illuminating when one notes that the Short et al. article (Vol. 30) shows that the Gehman Freeze Point never rises above -85°C until the cis-1,4 content drops to 36%.

The examiner further cited Australian Patent Specification No. 215,043 (Crawford et al.) to show that the ratio of aluminum to titanium affects the structure of polybutadienes. However, Crawford et al. employs only trialkyl aluminum/titanium tetrachloride catalysts and thus has no bearing upon the affidavit and claims directed to the use of trialkyl aluminum/titanium tetraiodide catalysts.

In a further attempt to demonstrate that the first Minchak affidavit was not commensurate in scope with the claims, the Moyer et al. article was again pointed to by the examiner for its alleged showing that the catalyst to solvent ratio has an effect upon the structure of polybutadiene made from trialkyl aluminum/titanium tetraiodide catalysts. However, as appellant correctly indicated, Moyer et al. describes the effect of variations in the catalyst to *monomer* ratio; while the lowest cis-1,4 content reported by Moyer et al. for polymers made using titanium tetraiodide in the catalyst is about 55%.

We, therefore, hold that neither the Short et al. or Moyer et al. articles, Stewart et al., or Crawford et al. support the examiner's position that the affidavit evidence is not commensurate in scope with the claims on appeal. We thus find it unnecessary to comment upon the availability of these references which have effective dates subsequent to the filing date of appellant's application.

Both the examiner and board gave the affidavit evidence little, if any, weight. As stated by the board:

Appellant's arguments and data attempting to distinguish between the iodides and the chlorides are complete-

ly at variance with appellant's specification, which does not support such distinction. It also supports no distinction between butadiene and isoprene. The Rule 132 affidavits, therefore, find inadequate support and are not persuasive. Directly in point is In re Davies et al., (CCPA), 475 F.2d 667.

We do not find that the *Davies* case supports the board's position. In *Davies,* an attempt was made to demonstrate the unobviousness of claims directed to a composition, a major proportion of which was polystyrene further containing a butadiene/styrene copolymer as a toughening agent. In the specification, there was no disclosure that the claimed invention possessed the unexpected properties of improved gloss, transparency and processability. The specification merely pointed out that the toughened polystyrene had improved mechanical properties such as impact strength and the like. Thus, in *Davies,* we agreed that the examiner was justified in his refusal to consider affidavits showing improved gloss, etc. for the reason that the properties were not disclosed in the application.

■ The instant specification, on the other hand, is replete with statements to the effect that the entire thrust of appellant's invention is the production of certain polymers which possess superior low temperature properties, such as improved flexibility at very low temperatures. The first Minchak affidavit shows just such superior low temperature properties possessed by polybutadienes prepared according to the claimed process. More specifically, the affidavit compares the Gehman Freeze Point Temperatures for a number of polybutadienes prepared according to the claims on appeal with (1) a polymer prepared according to the count of Interference No. 92–258; (2) examples 6 and 7 of Robinson et al.; and (3) the teachings of Horne. We hold that the specification supports such an affidavit. There is no requirement that superiority over prior art be disclosed in the application; it is enough if the basic property or utility in which the advantage resides is disclosed.

In re Lorenz, 333 F.2d 908, 51 CCPA 1522 (1964).

■ We recognize that appellant's application previously contained claims directed toward methods of making polyisoprene, polybutadiene and butadiene-isoprene copolymers, employing as a catalyst, the product derived by the interaction of (1) an aluminum compound of the general formula $R_2AlX$, wherein R is an alkyl, cycloalkyl or aryl radical and X a hydrogen, a halogen, or an alkyl, cycloalkyl or aryl radical, with (2) a metal halide selected from the group consisting of the chlorides, bromides and iodides of titanium and zirconium. We further recognize that such claims would be clearly anticipated by the art of record, particularly by the count of Interference No. 92,258 and the Horne patent. However, appellant's affidavit evidence may not be disregarded simply because of the broad scope of the claims in the original application. In re Saunders, 444 F.2d 599, 58 CCPA 1316 (1971).

■ The specification discloses that butadiene is the preferred monomer useful in practicing appellant's invention. Although the specification discloses no particular preference between catalysts containing titanium tetraiodide and titanium tetrachloride, this should not become the basis for disregarding affidavit evidence demonstrating the superiority of the resulting claimed process employing titanium tetraiodide in a catalyst over processes of the prior art which employ titanium tetrachloride. As we stated in In re Ruff, 256 F.2d 590, 596, 45 CCPA 1037, 1047 (1958):

[T]here is a basic difference between (a) a showing by an applicant for patent of what the *art knows* to be equivalents or what means taken from the art he can use indiscriminately without affecting his invention in carrying it out, and (b), a showing that *he has found,* as a part of his discovery or inventive process, that certain things may be used to achieve the same result. These findings are his property and he does not lose *all* of them just because of his showing when it turns

out that others have earlier discovered one or more of them.

Although the board stated that In re Ruff, supra, did not apply to the rejection involved herein "since the Examiner is not relying upon an equivalence set forth only in appellant's specification but upon the specific teachings of Robinson et al. and Horne," both the examiner and the board refused to give weight to the affidavits submitted by appellant because "data attempting to distinguish between the iodides and the chlorides are completely at variance with appellant's specification, which does not support such distinction." We find no substantive difference between this position and that found to have been erroneous in In re Ruff, supra.

■ Appellant is correct in his assertion that catalytic effects are a particularly unpredictable aspect of the art of chemistry. For example, see Corona Co. v. Dovan Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610 (1928); In re Doumani, 281 F.2d 215, 47 CCPA 1120 (1960). But we are of the opinion that a prima facie case of obviousness has been established by the Patent Office. However, appellant has submitted credible affidavit evidence showing unexpected properties possessed by polymers prepared according to his now claimed invention. This evidence can be employed to rebut the Patent Office's prima facie case. In re Papesch, 315 F.2d 381, 50 CCPA 1084 (1963).

After a careful review of all of the art of record including the evidence submitted by appellant, we are of the view that the prima facie case of obviousness has been successfully rebutted. Accordingly, the decision of the board is reversed.

Reversed.